# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MICROSOFT CORPORATION,

         Plaintiff,

   v.

SYNKLOUD TECHNOLOGIES, LLC,

         Defendant.

Civil Action No. 20-0007-RGA

## MEMORANDUM OPINION

Kelly E. Farnan, Travis S. Hunter, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Richard A. Cederoth, SIDLEY AUSTIN LLP, Chicago, IL; Ching-Lee Fukuda, Ketan V. Patel, SIDLEY AUSTIN LLP, New York, NY, Attorneys for Plaintiff.

David S. Eagle, Sean M. Brennecke, KLEHR HARRISON HARVEY BRANZBURG LLP, Wilmington, DE; Deepali Brahmbhatt, ONE LLP, Newport Beach, CA; John Lord, ONE LLP, Beverly Hills, CA, Attorneys for Defendant.

September 8, 2020

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is Defendant Synkloud's motion to dismiss "[p]ursuant to Federal Rules of Civil Procedure 12(b)(1), 12(h)(3), Lack of Standing and 12(b)(6)." (D.I. 8). I have reviewed the parties' briefing. (D.I. 9, 24, 28). For the reasons that follow, I will grant-in-part and deny-in-part SynKloud's motion.

## I.   BACKGROUND

Plaintiff Microsoft filed its Complaint on January 3, 2020, seeking declaratory judgment of non-infringement of eleven patents: U.S. Patent Nos. 9,098,526 ("the '526 patent"), 10,015,254 ("the '254 patent"), 8,606,880 ("the '6880 patent"), 8,856,195 ("the '195 patent"), 8,868,690 ("the '690 patent"), 9,219,780 ("the '780 patent"), 9,239,686 ("the '686 patent"), 7,870,225 ("the '225 patent"), 7,792,923 ("the '923 patent"), 7,849,153 ("the '153 patent"), and 7,457,880 ("the '7880 patent")[1] (collectively, the Asserted Patents). (D.I. 1).

SynKloud moves to dismiss the Complaint for lack of subject matter jurisdiction and standing,[2] and for failure to state a claim. (D.I. 8).

## II.  LEGAL STANDARDS

### A.   Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows for dismissal where the court lacks subject matter jurisdiction over an action. "A motion to dismiss for want of standing is [] properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."

---

[1] Microsoft concedes that after jurisdictional discovery (*see* D.I. 22, 23), it has no basis to continue with the '7880 patent.  (D.I. 24 at 18).

[2] A party has standing to bring an action under the Declaratory Judgment Act if an "actual controversy" exists, which is the same as an Article III case or controversy. *MedImmune*, 549 U.S. at 127. Thus, a separate "standing" inquiry has no independent effect on the analysis under the facts of this case.

2

*Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007). Motions brought under Rule 12(b)(1) may raise either a facial or factual challenge to the court's jurisdiction. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Factual attacks allow the court to delve beyond the pleadings to determine if the evidence supports the court's subject matter jurisdiction. *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1997). The party asserting subject matter jurisdiction bears "the burden of proof that jurisdiction does in fact exist." *Id.* Pursuant to Fed. R. Civ. P. 12(h)(3), a court must dismiss a complaint if "it determines that it lacks subject matter jurisdiction."

The Supreme Court has held that a "case or controversy" exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "The dispute must be 'definite and concrete, touching the legal relations of parties having adverse legal interests . . . .'" *Arris Grp., Inc. v. British Telecomm. PLC*, 639 F.3d 1368, 1373 (Fed. Cir. 2011). A "subjective or speculative fear of future harm" does not suffice. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008).

### B. Failure to State a Claim

Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 545 (2007). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). Dismissal under Rule 12(b)(6) is only appropriate if the complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp*, 550 U.S. at 570); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

SynKloud argues that this Court lacks subject matter jurisdiction over this case because Microsoft has not alleged any affirmative acts against it by SynKloud, Microsoft has not alleged any indemnity obligation to its customer – HP – that Synkloud has sued, Microsoft's references to Adobe and Dropbox litigations unrelated to Microsoft's products should be disregarded, and Microsoft has not alleged a dispute based on any infringement liability since it has asserted patents here not asserted by SynKloud against HP, Adobe, or Dropbox. (D.I. 9 at 6-10).

In declaratory judgment actions, the plaintiff must show that "a case of actual controversy" exists to establish subject matter jurisdiction sufficient to maintain an action in federal court. 28 U.S.C. § 2201(a). "[T]he question in each case is whether the facts alleged, under all the circumstances show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127. In an action for a declaratory judgment of non-infringement or invalidity of a patent, the plaintiff must show "(1) an affirmative act by the patentee related to the enforcement of his patent rights and (2) meaningful preparation to conduct

4

potentially infringing activity." *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1318 (Fed. Cir. 2012). The patentee's affirmative acts must be directed at the "specific plaintiffs" seeking a declaratory judgment. *Id.* at 1323.

The "immediacy and reality" inquiry can be viewed through the lens of standing. *Prasco*, 537 F.3d at 1338. To establish standing, the plaintiff must allege (1) an injury-in-fact, i.e., a harm that is "concrete and actual or imminent, not conjectural or hypothetical," (2) that is "fairly traceable" to the defendant's conduct, and (3) redressable by a favorable decision. *Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1291 (Fed. Cir. 2008).  Absent an injury-in-fact fairly traceable to the patentee, there can be no immediate and real controversy. *Prasco*, 537 F.3d at 1338.

Jurisdiction will not arise merely on the basis that a party perceives that a patent poses a risk of infringement. *Id.* ("The mere existence of a potentially adverse patent does not cause an injury nor create an imminent risk of an injury; absent action by the patentee, 'a potential competitor . . . is legally free to market its product in the face of adversely-held patent.'"). Rather, when deciding jurisdiction and standing questions in such actions, the Federal Circuit looks at a variety of factors, including the presence of any accusations of infringement or threats of suit, *see, e.g.*, *id.* at 1340 ("the defendants have not accused Prasco of infringement . . . [t]he lack of any evidence that defendants believe or plan to assert that plaintiff's product infringes their patents creates a high barrier to proving that Prasco faces an imminent risk of injury"), demands for royalty payments or a licensing agreement, s*ee, e.g.*, *MedImmune*, 549 U.S. at 128, the existence of a covenant not to sue, *see, e.g.*, *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1346 (Fed. Cir. 2010), or actual economic injury. *See, e.g.*, *Arris Grp.*, 639 F.3d at 1368 (noting that a potential economic injury alone is insufficient to confer standing).

The Supreme Court has emphasized that a fear of future harm that is only subjective is not an injury or threat of injury caused by the defendant that can be the basis of an Article III case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Rather, "it is the *reality* of the threat of . . . injury that is relevant to the standing inquiry." *Id.* at 107 n.8 (emphasis in original). Although *MedImmune* clarified that an injury-in-fact sufficient to create an actual controversy can exist even when there is no apprehension of suit, it did not change the bedrock rule that a case or controversy must be based on a real and immediate injury or threat of future injury that is caused by the defendants – an objective standard that cannot be met by a purely subjective or speculative fear of future harm.

Where a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if (a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers. *Arris Grp.*, 639 F.3d at 1375.

### 1.  Whether an Indemnity Obligation Exists Between Microsoft and HP

Where a patent owner accuses a supplier's customer (here, an original equipment manufacturer or OEM) of infringement based on the sale and use of the supplier's software and the supplier acknowledges and accepts a duty to defend the customer accused of infringement, the supplier has standing to commence a declaratory judgment action on those asserted patents. *Id.*

Microsoft argues that it has accepted an obligation to defend HP. (D.I. 24 at 9).

As the Court noted during the April 1, 2020 discovery teleconference and based on the current allegations, Plaintiff has accepted an obligation to defend, and is

> currently defending HP against Defendant's infringement allegations. Although
> SynKloud has threatened to sue each OEM, it has not yet sued any others. On this
> basis alone, there is sufficient record evidence to support an actual controversy as
> to Microsoft's alleged liability for HP's infringement of the '526, '254, and '225
> patents.

(*Id.*). SynKloud argues that while Microsoft pleads that HP is its OEM, it fails to allege the contextual detail of any request for indemnification or that Microsoft has agreed to or is obligated to indemnify HP or any other OEM. (D.I. 9 at 2). SynKloud argues that it is not enough for Microsoft to rely on SynKloud's prior suit against HP to support subject matter jurisdiction. (*Id.* at 8).

Absent a "clear, direct allegation" that a declaratory judgment plaintiff is obligated to indemnify its customers, a case or controversy does not exist based on an indemnity theory. *Microsoft Corp. v. DataTern*, 755 F.3d 899, 904 (Fed. Cir. 2014). A customer request to indemnify against patent infringement does not create subject matter jurisdiction. *Id.* at 903-04; *see also Cisco Sys, Inc. v. Alberta Telecomms. Research Ctr.*, 538 F. App'x 894, 898 (Fed. Cir. 2013) (while Cisco had filed suit to protect its customers, it had "never asserted that it had indemnity obligations for any liability its customers might incur").

In *Microsoft v. DataTern*, DataTern had sued Microsoft's and SAP's customers, accusing them of using the suppliers' software packages to infringe the asserted method claims, but there were no arguments that there was a case or controversy between DataTern and the suppliers as to direct infringement. 755 F.3d at 904. If the suppliers had an obligation to indemnify their customers, they would then have standing to bring suit. *Id.* In that instance, the suppliers would stand in the shoes of the customers and would be representing the customers' interests because of their legal obligation to indemnify. *Id.* But there was no evidence of such an obligation.

As an initial matter, the transcript from the referenced teleconference reveals no acknowledgment to the Court that Microsoft had accepted an obligation to indemnify HP. (*See* D.I. 23). In its Complaint, Microsoft alleges only that HP is an OEM. (D.I. 1 at ¶ 3). Microsoft does not allege that it will indemnify HP. Microsoft does not identify what conditions, if any, require it to indemnify its OEMs, including HP, and does not point to any such agreement or obligation.

Microsoft argues in its briefing that it has "accepted an obligation to defend, and is currently defending HP against SynKloud's infringement allegations." (D.I. 24 at 9). The complaint, however, is silent as to any indemnity obligations that Microsoft might have.  Thus, unlike in *Arris*, Microsoft has not asserted that it has indemnity obligations for any liability its customers might incur. *See* 639 F.3d at 1375. While Microsoft counsel stated at a discovery conference that Microsoft has "accepted an obligation to defend," there is no evidence in the record of any such agreement, promise, or obligation. Without alleging that it has accepted an obligation to indemnify, there is no case or controversy between the parties on the basis of indemnification. *See id.*

2.   **Whether There is a Controversy Between Microsoft and SynKloud Based on Alleged Acts of Direct Infringement by Third Parties**

a.   **Controversy Based on SynKloud's "Litigation Campaign"**

Microsoft notes that SynKloud has "launched a litigation campaign based on the Patents-in-Suit," including filing against several Microsoft competitors accusing cloud storage technology similar to that accused in the HP action as infringing patents with substantially similar claims as those patents asserted against HP. (D.I. 1 at ¶¶ 3, 27, 28). Microsoft alleges that SynKloud's claims directed to the cloud storage industry generally, and Microsoft's OneDrive product specifically, have placed a "cloud of uncertainty" over Microsoft and its products,

creating a concrete and immediate justiciable controversy between Microsoft and SynKloud. (*Id.* at ¶¶ 4, 29). SynKloud has alleged that HP "infringes the '225, '526, and '254 patents in part because of HP's inclusion of Microsoft's OneDrive cloud storage software . . . in the accused HP products." (*Id.* at ¶ 3).

SynKloud contends that it did not communicate with or threaten Microsoft pre-suit at all. (D.I. 9 at 7). This argument to defeat jurisdiction is, by itself, a non-starter. Direct communication between a patentee and a declaratory plaintiff is not necessary to confer standing. *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988) ("[I]f the circumstances warrant," an actual controversy "may be found in the absence of *any* communication from the defendant to the plaintiff.").

A patentee's aggressive enforcement strategy, even in the absence of direct threats against the declaratory judgment plaintiff, may support jurisdiction, however. *DataTern*, 755 F.3d at 906. Prior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy. *Prasco*, 537 F.3d at 1341.

In *Prasco v. Medicis*, Prasco argued that a case or controversy had been created because Medicis had caused Prasco to suffer actual harm—namely, "paralyzing uncertainty" from fear that Medicis would bring an infringement suit against it, given Medicis' history of enforcing patent rights to protect its "core products." *Id.* at 1338. Prasco had not alleged that defendants had restrained its right to freely market its product; rather, it was the threat of future injury that formed the basis for its complaint. *Id.* at 1339. The Court held that Prasco did not meet its threshold burden of proving an immediate and real controversy. *Id.* The defendants had not accused Prasco of infringement or asserted any rights against the relevant product, nor had they taken actions that implied such claims. *Id.* at 1340.

9

The Court in *Prasco* also held that one prior suit concerning different products covered by unrelated patents was not the type of pattern of prior conduct that made reasonable an assumption that Medicis would also take action against Prasco regarding its new product. *Id.* Accordingly, Medicis' prior suit premised on other patents could not by itself create a real and immediate controversy, and it was entitled to minimal weight in analyzing whether such a controversy had been created. *Id.*

In *DataTern*, software suppliers filed noninfringement and invalidity declaratory judgment actions against a patentee. 755 F.3d at 902. The patentee argued that the court lacked jurisdiction because the patentee never approached the suppliers regarding a license, never accused them of infringement, and indicated that it did not intend to sue the suppliers. *Id.* at 903. The software suppliers responded that jurisdiction existed because the patentee's infringement claims against the suppliers' customers were "based on" the customers' use of their products and thus impliedly asserted indirect infringement against the suppliers. *Id.* The suppliers also contended that the indemnification demands that they received from their customers, and the patentee's aggressive litigation strategy (it had sued more than 100 entities for infringement of the patents in question) supported the existence of a substantial controversy. *Id.*

To the extent that the suppliers argued that the patentee's suits against its customers *automatically* gave rise to a case or controversy regarding induced infringement, the Court in *DataTern* did not agree. *Id.* at 902. The Court was "sympathetic" to the suppliers' arguments that the patentee's litigiousness supported the existence of a controversy between the parties in the case. *Id.* at 906. The Court noted, however, that the patentee's litigation strategy appeared to involve suing software users, not software suppliers. *Id.* at 907. And there was no record evidence that the suppliers encouraged the acts that amounted to alleged direct infringement by

10

its customers in the other actions. *Id.* This cut against the suppliers' arguments that they might be

next or that litigiousness against direct infringers alone created a substantial controversy

regarding inducement. *Id.*

In determining whether there is a case or controversy of sufficient immediacy to establish

declaratory judgment jurisdiction, the Court looks to the elements of the potential cause of

action. *See Arris Grp.*, 639 F.3d at 1376-78.  It is not the case that definitive proof must exist that

would establish each element. *DataTern*, 755 F.3d at 905. But, to establish a substantial

controversy, there must be allegations by the patentee or other record evidence that establish at

least a reasonable potential that such a claim could be brought. *Id.*

Microsoft has asserted eleven patents in this declaratory judgment action. SynKloud

asserted three of them – the '254, '526, and '225 patents – in the HP action. (D.I. 1 at ¶ 1).

Microsoft has included eight other patents that are not in the HP action. (*Id.*). In support of

Microsoft's argument that there is a case or controversy between Microsoft and SynKloud as to

the additional eight patents, Microsoft alleges that SynKloud has initiated a "litigation

campaign" against Microsoft competitors Adobe and Acrobat, accusing cloud storage technology

"similar to that accused in the HP action as infringing patents with substantially similar claims as

those patents asserted against HP," referring to three cases filed in the Western District of Texas.

(*Id.* at ¶ 27).

Microsoft argues that SynKloud's licensing demands to Samsung, ASUS, and Dell have

created legal adversity between SynKloud and Microsoft due to SynKloud's implied assertions

of indirect infringement against Microsoft as to the '254, '526, '225, and '780 patents. (D.I. 24 at

10). The claim charts provided to Samsung, ASUS, and Dell include references to Microsoft

OneDrive as well as other cloud storage products, such as Samsung Cloud and Google Drive. (D.I. 25-2, Exs. B-D).

When the holder of a patent with method claims accuses the supplier's customers of direct infringement based on their use of the supplier's product in the performance of a claimed method, an implicit assertion of indirect infringement may arise. *See Arris*, 639 F.3d at 1375-76. In *Arris*, plaintiff Arris was a developer, manufacturer, and supplier of cable telephony and data products for cable system operators for use in voice over Internet protocol (VoIP) systems. Defendant BT was a telecommunications company owning relevant patents.  BT had sued Arris' customer for patent infringement.  BT's infringement accusations against Arris' customer "explicitly and repeatedly singled out" Arris' products, carrying the implied assertion that Arris was contributorily infringing, and BT repeatedly communicated that implicit accusation directly to Arris during the course of a "protracted negotiation process." *Id*. at 1377, 1381.

Arris sought a declaratory judgment that it did not infringe any of BT's patents. *Id.* at 1373. The Court of Appeals held that a case or controversy existed between Arris and BT regarding Arris' potential liability for contributory infringement. *Id.* at 1375. Although BT did not expressly accuse Arris itself of direct or indirect infringement, the Court deemed such an accusation to be unnecessary. *Id.* at 1379. The Court found it relevant that Arris was "directly and substantially involved" in BT's infringement and licensing negotiations. *Id.* at 1378. For example, Arris and BT conferred over conference calls during which Arris presented its non-infringement arguments and BT responded. *Id.* at 1379. An Article III case or controversy existed between the parties regarding Arris' potential liability for contributory infringement, as required for declaratory judgment jurisdiction for determination of non-infringement and invalidity. *Id*.

In *Hewlett-Packard Co. v. Acceleron LLC*, the Federal Circuit held that an actual controversy as to infringement existed where the patent owner sent the declaratory judgment plaintiff two letters seeking "to discuss" the patent. 587 F.3d 1358, 1363 (Fed. Cir. 2009). The Court, however, cautioned: "A communication from a patent owner to another party, merely identifying its patent and the other party's product line, without more, cannot establish adverse legal interests between the parties, let alone the existence of a 'definite and concrete' dispute." *Id.* at 1362.

Here, while they also incorporate other parties' products, SynKloud's claim charts show that Samsung, ASUS, and Dell's use of Microsoft OneDrive are central to SynKloud's infringement contentions. For example,

- The claim chart provided to Samsung for the '780 patent refers to "remote storage space provided by a storage service from Samsung Cloud Drive, Google Drive, or Microsoft OneDrive" (D.I. 25-2, Ex. B at 6), and "A storage server of OneDrive allocates e.g. 5GB free storage space" (*Id.* at 18).
- The claim chart provided to ASUS for the '526 patent uses OneDrive as the exemplary storage space software  (D.I. 25-4, Ex. D at 15-17).
- The claim chart provided to Dell for the '254 patent refers to "storage space provided by the Microsoft OneDrive" and "The Dell Laptop couples with the storage server of the Microsoft OneDrive" (D.I. 25-6, Ex. F at 9-10).

SynKloud's letters to Samsung, ASUS, and Dell each state that SynKloud believes that the products offered by Samsung, ASUS, and Dell practice SynKloud's patented methods and invite the companies to engage in licensing negotiations. (*See, e.g.*, D.I. 25-3, Ex. C).

As in *Arris*, where the Court of Appeals found the existence of an "actual controversy," SynKloud has "explicitly and repeatedly singled out" Microsoft products used in Samsung, ASUS, and Dell's products to support its infringement contentions. *See* 639 F.3d at 1377. Unlike *Arris*, however, there is no evidence of Microsoft having been "directly and substantially involved" in the alleged infringement and licensing communications between SynKloud and

13

Samsung, ASUS, and Dell. *See id.* at 1378. SynKloud has not initiated litigation against

Samsung, ASUS, and Dell, as it has with HP. *See DataTern*, 755 F.3d at 903. SynKloud's letters

invite Samsung, ASUS, and Dell to engage in licensing negotiations, but do not include an

accusation of infringement. (*See* D.I. 25-1, Ex. A; D.I. 25-3, Ex. C; D.I. 25-5, Ex. E). And while

SynKloud has acted by sending letters to third parties Samsung, ASUS, and Dell, it is Microsoft

that is the declaratory judgment plaintiff in this case. *See Hewlett-Packard Co.*, 587 F.3d at 1364.

Overall, these circumstances do not indicate that there is a dispute between Microsoft and

SynKloud concerning Microsoft's liability for infringement based on the assertions against

Samsung, ASUS, and Dell that is sufficient to constitute an Article III case or controversy.

 Microsoft also argues that SynKloud's pursuit of litigation against Microsoft competitors

Adobe and Dropbox, including on different—but related—patents, is enough to establish a case

or controversy between SynKloud and Microsoft in this case. (D.I. 24 at 14). Each case that

Microsoft cites in support of its position is distinguishable. In *Arkema Inc. v. Honeywell*

*International, Inc.*, the defendant patentee had already asserted claims against the same plaintiff

in the declaratory judgment suit for infringement of other patents covering similar technology as

the asserted patents. 706 F.3d 1351, 1358 (Fed. Cir. 2013). In *Dror v. Kenu, Inc.*, the Court noted

that a patentee's accusing a party in litigation of infringing its patents can give rise to jurisdiction

for the accused party to bring declaratory judgment claims for related patents of the patentee.

2019 WL 5684520, at *9 (N.D. Cal. Nov. 1, 2019). Microsoft, however, is not the accused party

in the Adobe and Dropbox litigations. *See id.; see also Miotox LLC v. Allergan, Inc.*, 2015 WL

2084493, at *2 (C.D. Cal. May 5, 2015).

 Microsoft's argument that related patents should be considered together where those

patents were asserted against different entities is not persuasive under the Supreme Court's

*MedImmune* test, which demands "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See* 549 U.S. at 127. SynKloud's pursuit of litigation against Microsoft's competitors Adobe and Dropbox is insufficient to create jurisdiction in this case between Microsoft and SynKloud.[3] *See Prasco,* 537 F.3d at 1339.

### b.  Controversy Based on Infringement

For the '254, '526, and '225 patents which are asserted by SynKloud against HP, Microsoft's OEM, I will assess whether claims of infringement liability by SynKloud against HP create an actual case or controversy between Microsoft and SynKloud.

Direct infringement occurs when a person without authorization makes, uses, offers to sell or sells any patented invention within the United States or imports into the United States a patented invention. *See* 35 U.S.C. § 271(a). "[A] party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a)." *Ricoh Co., Ltd. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008).

Actively inducing direct infringement of a patent by another constitutes infringement.  35 U.S.C. § 271(b). To prove induced infringement, the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766

---

[3] The '923 and '154 patents are not specifically referred to in the claim charts submitted in connection with the Adobe or Dropbox litigations, nor do they show up in the claim charts appended to the licensing communications. I assume, therefore, that Microsoft is asserting the '923 and '154 patents in this action on the theory that they are related to the other cloud storage technology patents and SynKloud might thus be inclined to assert them at some point. Thus, they are particularly dubious candidates for a declaratory judgment.  For the same reasons discussed above, I decline to find that there is a case or controversy between Microsoft and SynKloud as to these two patents.

(2011). Absent the knowledge and affirmative act of encouragement, no party can be liable for induced infringement.

An act of contributory infringement may include either the sale of a "component of a patented machine, manufacture, combination or composition," or the sale of a "material or apparatus for use in practicing a patented process." 35 U.S.C. § 271(c). The statute covers contributory infringement of, among other things, system claims and method claims. *Arris Grp.*, 639 F.3d at 1375. To hold a supplier liable for contributory infringement, a patent holder must show, among other things, that (1) the supplier's product was used in the system or method to commit acts of direct infringement; (2) the product's use constituted a material part of the patented system or method; (3) the supplier knew its product was "especially made or especially adapted for use in an infringement" of the patent; and (4) the product is "not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c).

In *DataTern*, plaintiffs were software suppliers Microsoft and SAP.  Defendant DataTern owned certain patents. DataTern sued several Microsoft and SAP customers for patent infringement. The claim charts provided to SAP's customers alleged direct infringement of two patents based on customers' use of SAP's BusinessObjects product. 755 F.3d at 905. The claim charts also variously cited to Microsoft, SAP, and third party-provided user guides and documentation for each claim element. *Id.* Microsoft and SAP sought a declaratory judgment that they did not infringe any of DataTern's patents. The Federal Circuit held that the district court had jurisdiction where the patentee's claim charts showed that the plaintiff-suppliers provided their customers with the necessary components to infringe the patents-in-suit as well as the instruction manuals for using the components in an infringing manner. *Id*. The claim charts

could be read to allege that Microsoft was encouraging the exact use which the patentee asserted amounted to direct infringement. *Id.*

As for claim charts that cited exclusively to third-party documentation for several key claim limitations, the Court found that a controversy did not exist between the parties. Those claim charts alleged customers' direct infringement based on the use of a Microsoft product—but did not imply that Microsoft induced the infringement. *Id.* at 906. Microsoft's sale of a product capable of being used in an infringing manner was not sufficient to create a substantial controversy regarding inducement. *Id.* The claim charts did not imply that Microsoft committed contributory infringement because they did not suggest that Microsoft's product was not "a staple article or commodity of commerce suitable for substantial non-infringing use." *Id.* There was no evidence that Microsoft knew that its product was "especially made or adapted for use in an infringement" of DataTern's patents. *Id.*

### i.   Direct Infringement

Microsoft argues that this Court has jurisdiction because SynKloud's allegations in the other cases accuse Microsoft's customers of direct infringement "solely due to the use or sale" of Microsoft's software, thereby effectively accusing Microsoft of direct infringement based on its own making and sale of those products. (D.I. 24 at 3, citing *Intel Corp. v. Future Link Sys., LLC*, 2015 WL 649294, at *7 n.10 (D. Del. Feb. 12, 2015)). To the extent that this argument involves third parties other than HP, this argument is unavailing for reasons already discussed.

For SynKloud's accusations against HP to give rise to a declaratory judgment claim regarding direct non-infringement of the Asserted Patents, the facts alleged in the Complaint and the documents referenced therein must imply that Microsoft itself may be liable for direct infringement. Although Microsoft sells the OneDrive product, there is no allegation that it

practices any of the methods disclosed in the method claims, and it cannot, therefore, be held liable for direct infringement. *See Ricoh Co.*, 550 F.3d at 1333. Accordingly, Microsoft has failed to allege an actual controversy with respect to direct infringement of the '254, '526, and '225 patents. *See MedImmune*, 549 U.S. at 127.

### ii.    Induced Infringement

"[T]o establish a substantial controversy regarding inducement, there must be allegations by the patentee or other record evidence that establish at least a reasonable potential that such a claim could be brought." *DataTern*, 755 F.3d at 905. The allegations must imply Microsoft's liability by suggesting that Microsoft took "an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Id.* at 904. An accusation would suggest such encouragement if, for example (as in *DataTern*), the indirect infringer was asserted to have provided the direct infringer with "instruction manuals for using the [indirect infringer's] components in an infringing manner." *Id.* at 905.

In *DataTern*, the Federal Circuit held that claim charts provided to customers of the declaratory judgment plaintiff were sufficient to establish an implied assertion of indirect infringement. *Id.* The claim charts showed that the declaratory judgment plaintiff provided its customers with the necessary components to infringe and cited to guides and documentation provided by the declaratory judgment plaintiff. *Id.* The Court held that jurisdiction did not exist for one of the two patents there asserted because the claim charts cited exclusively to third-party-provided documentation for several key claim limitations, not documentation or instructions provided by the declaratory judgment plaintiff. *Id.* at 904. Simply selling products to customers who may be using the products in an infringing way did not, in and of itself, amount to induced infringement. *Id.*

Here, the claim charts demonstrate that Microsoft provides HP the necessary components to infringe. (D.I. 1-1, Exs. L-N). For the '526 and '254 patents, SynKloud's claim charts contain screenshots of Microsoft OneDrive's functionality but do not provide any instructions from Microsoft on how to use the product. (*See* D.I. 1-1, Exs. L, M). Thus, while Microsoft provides the necessary components to HP to allegedly infringe, it is not alleged to provide guides or documentation.  *See DataTern,* 755 F.3d at 904. For the '225 patent, however, SynKloud's claim charts incorporate Microsoft-provided instructions on how to use OneDrive, the allegedly infringing component. (*Id.*, Ex. N). Accordingly, I do not find that there is an actual controversy between Microsoft and SynKloud as to induced infringement of the '254 and '526 patents. *See DataTern*, 755 F.3d at 904. I do, however, find that there is an actual controversy between Microsoft and SynKloud as to induced infringement of the '225 patent. *See id.*

### iii.    Contributory Infringement

The sale of a component without a substantial non-infringing use, even when included in a product that, as a whole, does have a substantial non-infringing use, may still constitute contributory infringement. *Ricoh Co.,* 550 F.3d at 1336–40.

Here, the claim charts for the '526 and '254 patents describe a "remote storage space provided by storage service providers such as pre-installed Microsoft OneDrive." (D.I. 1-1, Exs. L, M).

- "The HP Laptop establishes a wireless link, e.g., WiFi, for the wireless device to access the storage space provided by the OneDrive via Microsoft Edge web browser . . . The OneDrive server allocates a 5 GB free storage space exclusively to a user." *See, e.g.*, *id.* Ex. L.

- "The HP Laptop couples with the OneDrive server wirelessly to carry out a requested operation for remotely accessing the assigned storage space." (*Id.*).

- "The storing of a data object includes downloading a file from a remote server . . . into the user's assigned storage space of the OneDrive." (*Id.*).

The claim chart for the '225 patent describes:

- "The network-attached device (NAD) having a storage (e.g., a free 5GB of storage space allocated to each of the users by the server of MS OneDrive) to store data . . . couples to the network for receiving device level access commands (e.g., associated with request for signing into OneDrive or request for uploading files) from the host in data link frames." (D.I. 1-1, Ex. N).

- "The installed or activated device driver (e.g. OneDriveSetup.exe, Microsoft-Windows-OneDrive-Setup-Package) running on the host (i.e., HP Laptop) enumerates the NAD (e.g., the remote storage space of OneDrive) . . ." (*Id.*).

- "The virtual host bus adapter controlling the NAD (e.g., the remote storage space of OneDrive) in a way indistinguishable from the way as a physical host bus adapter device controls device, i.e., the user can access to the remote storage space of OneDrive and open the folder and file within the storage space through file explorer, so that the host recognizes the OneDrive space as if it is a local device." (*Id.*).

SynKloud accused the customers of Microsoft's OEM HP of direct infringement of claims of the '526, '254, and '225 patents. SynKloud repeatedly singled out Microsoft's OneDrive product used by HP to support its infringement contentions. *See Arris Grp.*, 639 F.3d at 1376-77. The claim charts make it clear that HP's use of OneDrive is central to SynKloud's infringement contentions. Thus, the charts allege that Microsoft's product was used to commit acts of alleged direct infringement. *See* 35 U.S.C. § 271(c).

Assuming direct infringement is found, Microsoft would be liable under § 271(c) if it sold a bare component (for example, a program containing steps to execute the patented methods) that had no other use than practicing the methods of the Asserted Patents. At a minimum, SynKloud identified Microsoft's OneDrive as satisfying at least one essential element or step for every asserted claim analyzed in the claim charts. *See Arris Grp.*, 639 F.3d at 1378. SynKloud's claim charts refer to Microsoft OneDrive repeatedly for the infringement contentions for each patent. SynKloud's extensive focus on Microsoft's OneDrive product in its infringement contentions implies that Microsoft's product is being used as a "material part" of

the allegedly infringed invention – one of the required elements of contributory infringement. HP is one of Microsoft's OEMs, and according to SynKloud's claim charts, Microsoft OneDrive is pre-installed on HP's laptops. *See DataTern*, 755 F.3d at 906. Such a component, especially adapted for use in the patented process and with no substantial non-infringing use, would be "good for nothing else" but infringement of the patented process. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005); *Ricoh Co.*, 550 F.3d at 1337. Thus, I find that Microsoft has established declaratory judgment jurisdiction as to contributory infringement of the '254, '526, and '225 patents.

"[A] specific threat of infringement litigation by the patentee is not required to establish jurisdiction, and a 'declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids magic words such as 'litigation' or 'infringement'." *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1347-48 (Fed. Cir. 2011). Here, even in the absence of an express accusation against Microsoft, the circumstances indicate that there is a dispute between Microsoft and SynKloud concerning Microsoft's liability for induced and contributory infringement of the '225 patent and for contributory infringement of the '526 and '254 patents that is sufficient to constitute an Article III case or controversy and establish jurisdiction between the parties.

### B. Failure to State a Claim

SynKloud argues that Microsoft "merely parrot[s] a claim limitation per patent written verbatim as non-infringing," and that it uses these conclusory assertions to seek a declaration regarding all of its products, services, and technology (at most), or all of its cloud storage technology (at least). (D.I. 9 at 3, 12). SynKloud notes that Microsoft's references to its cloud storage product, OneDrive, are prefaced with the phrase "for example," and contends that

21

Microsoft's vague allegations do not provide sufficient notice of its non-infringement positions when it does not include any references, citations, or explanations on how Microsoft's products function or operate in a non-infringing manner. (*Id.* at 3, 12). SynKloud also argues that Microsoft's claims relating to direct and indirect infringement are vague and overbroad. (*Id.* at 13, 14).

Microsoft argues that it has identified two specific products, its Outlook and OneDrive software, and has sought a declaration that those products do not infringe the Asserted Patents. (D.I. 24 at 18). Microsoft asserts that it has properly pleaded that it does not contribute to or induce infringement by others because it pleads that there is no direct infringement; it also requests leave to amend to address any pleading deficiencies found by the Court. (*Id.* at 19).

In its Complaint, Microsoft puts all of "its products, services or technology" at issue. (D.I. 1 at ¶¶ 2, 26, 29). Microsoft also specifically puts its OneDrive cloud storage software at issue. (*Id.* at ¶¶ 3, 26, 29). There is no reference to "Outlook" in the Complaint.

The cases that Synkloud cites in support of its argument that a plaintiff cannot state a claim for declaratory judgment of non-infringement without specifying the particular products for which the plaintiff seeks such a declaration are distinguishable. (*See* D.I. 9 at 13). In *Xilinx, Inc. v. Invention Investment Fund I LP*, the deficient invalidity counts claimed only that the patents failed "to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112." 2011 WL 3206686, at *6 (N.D. Cal. July 27, 2011). In *Winstron Corporation v. Phillip M. Adams & Associates, LLC*, the declaratory judgment complaint "fail[ed] to identify any specific products." 2011 WL 1654466, at *12 (N.D. Cal. April 28, 2011). In *PPS Data LLC v. Allscripts Healthcare Solutions Inc.*, the rejected declaratory judgment complaint consisted of two paragraphs

22

containing "bald assertions, devoid of fact." 2012 WL 243346, at *4 (M.D. Fla. Jan. 25, 2012).
In *Eidos Communications, LLC v. Skype Technologies SA*, the Court rejected infringement
claims that only identified "examples of large technology areas" in describing the accused
products. 686 F. Supp. 2d 465, 468 (D. Del. 2010). There, the plaintiffs did not identify a type of
product or software offered by the defendants which it alleged infringed its patents, but only a
"vague description." *Id.* at 469.

Here, Microsoft has identified its cloud storage technology, and more specifically
OneDrive, as the product that is alleged to infringe the Asserted Patents. The threat of
infringement that Microsoft perceives is due to SynKloud's litigation against HP, for which the
claim charts that specifically refer to Microsoft's OneDrive product are attached in this action.
This stands in contrast to the vague and conclusory allegations found by the Court in *Xilinx*,
*Winstron, PPS Data*, and *Eidos.* Only cloud storage technology appears to be relevant to the
'254, '526, and '225 patents, in the context of the claim charts. *See id.* at 468.

Even if Microsoft is seeking a declaration regarding its "cloud storage technology" more
broadly, this would also be sufficient to state a claim where it has identified an exemplary
accused product. In *Philips v. ASUSTeK Computers Inc.*, for example, the Court denied a motion
to dismiss where the plaintiff identified one exemplary accused product but did not plead an
exhaustive list of accused products. 2016 WL 6246763, at *3 (D. Del. Oct. 25, 2016). The claim
charts attached to Microsoft's Complaint identify its non-exhaustive portfolio of cloud storage
technology products in a manner sufficient to put SynKloud on notice of the products at issue in
this case. *See Bell Atl. Corp.*, 550 U.S. at 545; *T-Jat Sys. 2006 Ltd. v. Expedia, Inc.*, 2019 WL
4041586, at *3 (D. Del. Aug. 27, 2019).

Microsoft argues that because it has properly pleaded its allegations relating to not directly infringing, it necessarily has pleaded the allegations for indirect infringement. (D.I. 24 at 19). In the alternative, Microsoft seeks leave to amend its complaint to address any insufficiency. (*Id.* at 20).  Since I accept that Microsoft has adequately pled "no direct infringement," I think that it has also adequately pled "no indirect infringement."

## IV.    CONCLUSION

For the foregoing reasons, SynKloud's motion to dismiss is granted-in-part and denied-in-part. An accompanying order will be entered.